Good morning honors and may you please the court. My name is Felipe Romero and together with Osvaldo Hidalgo-Odomendi we represent the petitioner Mr. Aliyyi. This is a case where a young Oromo man, an Ethiopian citizen, was severely beaten, suffocated with a plastic bag, and tortured by his government for his political beliefs and is now in danger of being sent back. Your honors, today we will demonstrate that the BIA erred in affirming the immigration decision since there isn't substantial evidence to support a finding of adverse credibility. I will argue that one, the original documents are consistent and corroborate Mr. Aliyyi's testimony, and two, that his testimony regarding his Ethiopian passport was not evasive. Then Mr. Hidalgo-Odomendi will argue that the border interview and the alleged submissions of Mr. Aliyyi's brother's arrest do not support a finding of adverse credibility. And if time permits, your honors, he will discuss the issue of the change of circumstances in Ethiopia. We plan to speak for four minutes each and may I reserve two minutes for rebuttal, one minute each. Yep. Turning first to both the original untranslated versions of the birth certificate and identification card, both of the untranslated documents are consistent and corroborate Mr. Aliyyi's testimony as to his identity and that he was born on May 5th, 1992. Even the immigration judge notes that his birth certificate is consistent with Mr. Aliyyi's testimony, which is on page 45 of the administrative record. Then the immigration judge made an impermissible speculative finding that it would be implausible for both of these documents to switch between the Gregorian and Ethiopian calendars without indication, stating that it is common sense. However, the information and how it is presented on a foreign document is not common knowledge. Thus, without stating specific knowledge or points to somewhere on the record, the finding of impossibility is not supported and cannot be used to a finding of adverse credibility. Turning now to the original birth certificate and date it was issued, the immigration judge believed that Mr. Aliyyi's testimony was inconsistent with the date the birth certificate was issued. While Mr. Aliyyi testified that his father obtained the birth certificate after he had left Ethiopia, he is understandably mistaken as to when the original birth certificate was issued because he had not seen the until he had fled from Ethiopia. Moreover, this is a mistake of trivial error that does not go to the veracity of Mr. Aliyyi's testimony. Finally, turning to the translation of identification card, the immigration judge found that the identification card was unreliable due to the incomplete translation. However, the translation of the identity card reads as a summary translation, which has been common practice in immigration law in the past. Thus, the summary translation of the identification card can be used to ascertain Mr. Aliyyi's date of birth. Alternative? Yes, Your Honor. This is a post real ID case, isn't it? That is correct, Your Honor. So the discrepancies do not have to go to the heart of the contention, correct? That is correct, Your Honor, but they still have to... So when he told, when he said that he first obtained a passport in school in the first grade and then said that he obtained it when he was in the 10th grade and that he then lost that passport when he was 21, the agency cannot conclude that this affects his credibility? Well, Your Honor, the testimony as to the passport was dragged on by the closed-ended leading type of questions, but Mr. Aliyyi testified that he started school in 1999. There were questions on cross-examination counsel. Cross-examination is leading questions. Yes, Your Honor, and when you look at the testimony, Mr. Aliyyi stated that he started school in 1999 and then stated that he lost his passport when he was 21, which has been consistent with Mr. Aliyyi's testimony. Yeah, we'll give you a minute for rebuttal and then we'll move on to your co-counsel. Thank you for this time. My name is Osvaldo Hidalgo Tamendi. I will be making two points. First, did the IJ and BIA improperly use the border interview as proper evidence as to which to base an adverse credibility finding? And second, the alleged omissions they point to regarding Mr. Aliyyi's brothers are non-existent, and if time allows and if the court would like, I can discuss the issues of the change circumstances finding. Turning to the border interview, it is important to note the government failed to give Mr. Aliyyi a credible fear interview and then relies on that mistake to make a finding of adverse credibility. Though Aguilar Urias states that the border interviews may be used for an adverse credibility finding, it does not state that they must be used. Under the factors stated in matter of JCHF, courts are allowed to do pre-trial statements in making a finding of inconsistencies, but not with complete discretion and under certain guidelines. Proper interviews for credibility findings ask further questions to create a record and build a case for the petitioner. This interview did not and thus is improperly used. Pre-trial statements and statements made at trial... But bottom line, before the Border Patrol officer, he doesn't say anything about his brothers. He didn't mention his brothers being taken by the military, missing ever since. He didn't mention the brother's arrest when the officer asked about the threats. Then in his asylum application, no mention of his brothers when asked, have you or your family or close friends or colleagues ever experienced harm or mistreatments or threats in the past by anyone. Now he lists his brothers. That's what they find. It isn't a matter of simply before the Border Patrol officer, we're looking also at the asylum application and now and they're saying, hey, there's a difference here. He was asked why. He says, I did tell him, but they said I'd be able to say more with the asylum officer. They asked why in the asylum application. He says the interpreter made a mistake and the BIA says no, that can't be. It's too much a part of what he's got to say here. That's not sufficient. I mean the brother's arrest is more than a mere omission, significant part of the persecution. I guess I'm trying to figure out why that isn't enough given our standard of review on, in credibility. That's fair, your honor. I would like to disagree. First off, the, like I'm stating before, the border interview is an improper document as to which to make an adverse credibility finding. He didn't do it only on that. It was one before the Border Patrol officer and one before the asylum application and now he changes both. So I will point to the page 444 of the record. Mr. Lee did state that his, the location of his brothers were unknown and then later explains why he did not, in page 140 of the record, explains why he did not include the information about his brothers as he was stated by someone of authority that he would be able to explain that further and it would be further inquired into. The only other way we can reconcile this, your honor, is looking at the Iman case that we filed in the 28J letter. The Iman case states that we can, and we've recently decided, we cannot weigh all admissions similarly. This is, the facts in the Iman case are very similar to this case and where it's the rape of the sisters brought up for the first time on cross, where here it's the brothers that was not brought up for the first time but was brought up during direct testimony and these are, these matters are, may I have time to finish this one, thank you, your honor. These, these admissions are collateral and ancillary as they do not go directly to the persecution of Mr. Lee or Mr. Lee's personal experience. They go to what happened to the brothers similarly to what happened to Mr. Iman's sisters in the Iman case. Okay, thank you, counsel. We'll give each a minute for rebuttal and Ms. Mascott, go ahead. Thank you. Good morning and may it please the court. I'm Jennifer Mascott arguing on behalf of government and as your honors pointed out in questioning, this case is really about the deferential standard of review due to the administrative finder of fact regarding credibility in asylum and withholding of removal and cat determinations. Mr. Ali, like all individuals claiming these types of relief, bears the burden of proof to establish he merits these fairly extraordinary forms of relief available under U.S. law only to individuals who have established that they've suffered past persecution or face a fear of Mr. Ali's indicated he was persecuted and suffered terrible treatment that the IJ indicated would rise to the level of persecution on behalf of political opinion if Mr. Ali establishes that the facts as he described them occurred but he provides no clear affirmative evidence in the record noted by the IJ or the board of resentment to this court of his persecution other than his own testimony and so therefore the board and the IJ decisions hinge essentially entirely on the credibility of his a testimony through written and oral statements that he was persecuted. This court has said that an applicant's own testimony could be sufficient to establish that he merits relief without corroborating evidence but only if the fact finder finds the testimony to be credible and persuasive and here the IJ and the board found the opposite as has been pointed out the adverse credibility determination subject to significant deference under the substantial evidence standard by statute in light of the real ID Act because adverse credibility is basically a factual finding as this court's determined the finding of the board in the IJ is conclusive and has to be affirmed unless any reasonable adjudicator would have been compelled to conclude to the contrary. The courts also noted in 2010 in the Strickler versus Holder decision that essentially the agency credibility determinations review by this court is significantly restricted and only the most extraordinary circumstances justify overturning an adverse credibility determination. Deference to the fact finder particularly on questions like credibility is for good reason because the finder of fact here in the first instance the immigration judge is closest to the evidence. The immigration judge was able to see Mr. Aleighi face-to-face, was able to evaluate his demeanor, cross-examine him and as has been pointed out the inherent plausibility of the testimony internal inconsistencies in the documents between written statements and verbal statements are all relevant to establishing credibility. There's no presumption of credibility given to Mr. Aleighi because he has to establish the fact of his persecution and unfortunately here the evidence comes nowhere close to establishing entitlement to relief. The petitioner's sum total of his evidence is the introduction as petitioner's counsel has noted of two identity documents and then his own testimony and so he never really persuasively establishes the veracity of the identity documents. Fundamental facts are in dispute. There's inconsistency about the issue and states of the documents. There's inconsistency in Mr. Aleighi's testimony about how he lost his passport which is why he doesn't have an original identification document and then it has been discussed inconsistencies and how Mr. Aleighi discusses harm to his family and so I guess I'd like to start. If I could interrupt you just a minute. As to the identity documents why is that any more than something like a typographical error or a date which we have suggested is not enough for a credibility determination? Your Honor that's a good question and indeed you know the IJ points to several errors in the documents and some of them probably possibly are clerical. For example on the birth certificate the English translation of the date of birth is January 14, 2000 and almost certainly the translator just erroneously thought that the Ethiopian date had been used rather than the Gregorian date in the first place but the trouble goes to more than just clerical errors. So for example with the birth certificates we've got the English translation and then the untranslated version. Well the untranslated version suggests it was issued in 2010 which would have amounted to a 2018 date as a matter of translation but the English translation gives a March 2017 issuance date which just doesn't match up regardless of which dating system is used. It doesn't match up with the untranslated version and then none of those things are consistent actually with Mr. Ali's testimony. So first Mr. Ali suggests his father got the birth certificate in 2018. The petitioner later on appeal tries to say well maybe the father got it in 2018 even though it was issued in 2017 according to the English version of the document but there's no it's impossible for it have been issued in 2017 because he was in Ethiopia in jail then and would have had to get it himself and it was impossible to do so and I think the other the other point by your honor as well as in the cases where omissions that are just clerical are seen as not sufficient for establishing adverse credibility we don't have the affirmative inconsistencies that we have here and so moving for example to the to the testimony about the passport at one Mr. Ali in his own remarks suggests that he lost the passport while he was a student but then later suggested did not get the passport till after his times a student ended or until he was 21 and so even on something fundamental as weary was at the time that he lost that document the testimony does not add up and I think also to get at some of the things that your honors were asking petitioners counsel about with the inconsistencies about the facts and pointed out in questioning in a situation here where the petitioners claiming persecution based on political opinion and at one point actually tries to claim persecution based on race or ethnicity clearly harm to his family would have been relevant and he was actually asked twice in the border interview specifically have there been any types of threats against you or your family and so in response to that specific question mentions only the harm to his father in 2010 and as your honors pointed out he's asked specifically not just about types of threats against him or his family in the border interview but he's also asked specifically if he has siblings he says yes there are several follow-up questions where are your siblings he says they're still in Ethiopia um he's asked are they part of the military he says no and so it's not until the 2018 testimony before the immigration judge that the elite mr. Lee says instead in 2018 two of his brothers were were detained and captured by the himself had to flee from Ethiopia because he was afraid he was going to essentially be detained for the third time and so when the harm to the brothers happens commensurate according to his later testimony was significant harm to himself that he's now using to be essentially his only evidence his testimony that he suffered persecution it is highly inconsistent and questionable why that would not have been mentioned in response to a point blank question at the border interview have there been threats against your there was also a direct question in the i-589 application form have you or your family or close friends or colleagues ever experienced harm and there again mr. Lee admitted actually his father's harm in 2018 father's abduction in 2010 and then the brothers harm in 2018 as well and really this all comes back to the standard of review because under the standard of review with the real ID Act when we're compelled to affirm the adverse credibility determination unless it was entirely implausible and a conclusion to the contrary is compelled it really is not a question about whether there's any plausible explanation about maybe why there would have been various clerical inconsistencies on documents or what could possibly have been going on in mr. Lee's mind to not bring up his brother's persecution earlier date instead the the deference is entirely to the back finder who was there questioning mr. Lee following up and determined really with substantial evidence because of the inconsistency in the testimony about the passport the testimony about the fundamental harm to close family members and then the questions of not even being able to affirmatively establish any ID document that's not riddled with at least some question mark there's been no basis that the petitioners may able to establish that all of the sum total of that would compel a conclusion that mr. Ali is indeed credible and so the government would ask this court to deny the petition for review yes sir I would ask one other question and I'm gonna go to cat relief it seems to me on cat relief that the petitioner discusses the widespread human rights violations in wouldn't be enough for the cat relief yes your honor I'm on cat relief as an initial matter I mean credibility of the petitioner but the widespread human rights violations in Ethiopia I guess I'm trying to figure out why that alone couldn't get him some cat relief yes your honor so the standard under cat is that mr. Lee would have to establish a clear probability that it's more likely than not that he specifically would be tortured and so this court has noted that for cat relief it's not enough just to generally say that the state that the situation in the country is harmful and dangerous but that there has to be a probability that the individual himself would be would suffer torture and as we with the election of new leaders and with statements pulling back on some of the persecution and some of the tamping down of protests that the same individuals are not in control right now in Ethiopia as they were at the time of mr. Ali's departure and so the change circumstances aren't necessary the change circumstances show that he would not necessarily face the same persecution because it's different people in leadership and then there's not ever been a connection to how we know that he himself would be would suffer harm even if there continues to be some instances of unrest in Ethiopia thank you counsel we'll go to the rebuttal we'll give you each one minute just for future reference normally we we limit it to one attorney arguing on rebuttal but we'll indulge you and give you each a minute so go ahead and may please the court well we can see that the translation the English translation of mr. Lee's birth certificate was a consistent his actual original untranslated documents were consistent and cooperate mr. Lee's testimony that is year of birth was 1992 and his date of birth was May 5th 1992 also your honors only one of the documents is inconsistent mr. Lee's ID card was issued was issued on August of 2018 which was testimony and as to the passport mr. Lee stated that he lost his password he was 21 and then the questioning turns into when he was in school however mr. Lee at least six times in the record has demonstrated that he didn't go that he didn't go past the 10th grade during his questioning with his attorney during rebuttal during the questioning with mr. seal the trial attorney and in his asylum application and at the border interview so mr. Lee had been consistently has been consistent throughout this testimony Thank You counsel and co-counsel go ahead thank you your honor a court precedent allows for border interviews not to have certain details or to admit certain details when like it's in the case of hearing we are in front of if you look at Lisey Cui you look at JCHF when it's and if you look at mr. Lee's personal circumstances it's normal it's human that he erases traumatic experiences from his mind or does not require does not does not remember them right away especially within a informal border interview as well after having ran away from an authority figure with a gun trying to chase him meeting an authority figure with a gun trying to elicit information and not specific information it's normal to understand that he might not include all the information in the border interview turning to the change circumstances the government has the burden of proof to show that there have been changed circumstances and they have not shown this now they try to point to promises and a policy change where the leader is part of the same party that directly oppressed and abused mr. Lee and with that we ask that the court reverse the adverse credibility finding and remand this case for a finding on the merits thank you thank you I think all counsel for very good arguments and we're appreciative of the Student Council's efforts and your your mastery of the facts of this case so congratulations and the case is now submitted thank you
judges: Hawkins, N.R. Smith, Nelson